**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEBORAH GAMBILL, et al. | ) | |
|           Plaintiffs | ) | Civil Action No. 22-5 Erie |
| | ) | |
|    v. | ) | District Judge Susan Paradise Baxter |
| | ) | |
| CHILD DEVELOPMENT CENTERS, | ) | |
| INC., | ) | |
|         Defendant. | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

### A.    Relevant Procedural History

Plaintiff Deborah Gambill ("Gambill"), Suprena Hawkins ("Hawkins"), Nena Hudson-Estrella ("Hudson-Estrella"), Royal Johnson ("Johnson"), Veronica McCallum ("McCallum"), Deasia Moore ("Moore"), Milton Ortiz ("Ortiz"), Martha Tate ("Tate"), and Garry Williams ("Williams"), instituted this civil action on January 3, 2022, against Defendant Child Development Centers, Inc. ("CDC"), asserting several claims arising from Defendants' decision to place them on indefinite furlough from their employment.

CDC filed an answer to Plaintiffs' complaint on March 31, 2022 [ECF No. 6], and the parties subsequently completed discovery. Upon the close of discovery, CDC filed a motion for summary judgment [ECF No. 55], which has been fully briefed by the parties. CDC has since filed a notice with the Court stating that they have reached a settlement with seven of the nine Plaintiffs in this case and that the only claims remaining subject to CDC's pending summary judgment motion are those against the non-settling Plaintiffs, Hawkins and Tate. These claims include the following: (1) an age discrimination claim on behalf of both Hawkins and Tate,

pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 Pa. C.S. §§ 951, *et seq.* ("PHRA"); (2) a race discrimination claim on behalf of both Hawkins and Tate, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the PHRA; (3) a race discrimination claim on behalf of both Hawkins and Tate, pursuant to 42 U.S.C. § 1981; and (4) an interference claim under the Family Medical Leave Act, 29 U.S.C. § 2615(a) ("FMLA") on behalf of Hawkins only.

This matter is now ripe for consideration.

**B.     Relevant Factual History**[1]

CDC is a 501(c)(3) nonprofit organization that provides childcare and early childhood education in Erie and other counties in Pennsylvania. (ECF No. 57, at ¶ 1). CDC commenced operations in Erie County for the 2019-2020 school year upon receipt of the Head Start grant, with multiple centers. (Id. at ¶ 2). Prior to that time, the Greater Erie Community Action Center ("GECAC") had been awarded the Head Start grant, so CDC held a public meeting to inform GECAC employees about employment opportunities with CDC. (Id. at ¶ 3). CDC's CEO, Rina Irwin ("Irwin") personally called each of these prior GECAC employees to extend job offers with CDC, with salary ranges having been predetermined by the grant. (Id. at ¶ 4). In 2019, CDC was at full enrollment. (Id. at ¶ 5).

Hawkins, a then 46-year-old African-American, was hired on July 2, 2019, as a float for

---

[1] The factual history set forth herein has been gleaned from Defendant's concise statement of material facts [ECF No. 57], and Plaintiffs' counter statement of concise statements of fact [ECF No. 68, at pp. 31-59], to the extent the facts set forth in each are unopposed and/or amply supported by the evidence of record. Moreover, the facts recited here are only those facts related to the claims of the remaining Plaintiffs, Hawkins and Tate.

CDC's Century Center. (Id. at ¶ 8). Tate, a then 56-year-old African American, was hired in August 2019 as a float for CDC's Asbury Center. (Id. at ¶ 11).

In March of 2020, the Commonwealth of Pennsylvania ordered all schools to shutdown due to the COVID-19 pandemic. (Id. at ¶ 16). CDC's Centers were shutdown from March 2020 through the fall of 2020, when the Commonwealth allowed the schools to reopen. (Id. at ¶ 18). CDC continued to pay all of its employees during the shutdown. (Id. at ¶ 17). When CDC reopened, it experienced a decline in enrollment of approximately 400 children across the Erie Centers due to parents' reluctance to have their children return to in-person learning. (Id. at ¶ 19). As a result, CDC only had 360 students enrolled, which was roughly 400 students below their federally-mandated slot amount. (Id. at ¶ 20). The reduction in enrollment led to multiple empty classrooms. (Id. at ¶ 23). Subsequently, the federal government permanently reduced CDC's Erie County Head Start slots from 680 to 459, citing challenges in meeting enrollment requirements (ECF No. 69, at ¶ 26).

Due to the financial requirement to be a prudent steward of federal funds, CDC determined that it must furlough employees to correlate with the decline in enrollment. (Id. at ¶ 29). Irwin instructed center officers to rank their employees from their top performer to their lowest performer and to determine which positions were essential to continued operations. (Id. at ¶ 31; ECF No. 58-6, transcript of deposition of Laura Stippich, at pp. 5-6 (internal pp. 59-60)). In September 2020, a two-hour meeting was held at which Irwin asked each director/supervisor to identify their lowest performer in each position and provided them with the previous annual performance review, if one existed. (ECF No. 68 at ¶¶ 32-34).

Ultimately, CDC laid off eighteen employees at multiple centers, including Asbury,

Century and Cascade, in the following positions: lead teachers, pre-school assistants, floats, vacation floats, family engagement specialists and foodservice and maintenance workers. (Id. at ¶ 39). Out of those eighteen furloughed employees, eight employees were Caucasian, nine employees were African-American, and one employee was Hispanic. (Id. at ¶ 42). CDC offered each furloughed employee an opportunity to secure additional wages and benefits to which they would not otherwise have been entitled in exchange for a severance agreement and release, which contained a "waiver of re-employment provision." (Id. at ¶ 45). None of the Plaintiffs accepted the severance package. (Id. at ¶ 47). When enrollment started to increase in the summer of 2021, CDC sent job offers to eight of the nine Plaintiffs, but none of the Plaintiffs accepted the offers. (Id. at ¶ 48).

On September 3, 2020, Hawkins invoked her right to leave under the FMLA to care for her school-aged children. (ECF No. 69, at ¶ 152; ECF No. 58-13, transcript of Hawkins' deposition, at pp. 5-6 (internal pp. 26-27)). CDC approved Hawkins' FMLA leave, which was to be concluded in December 2020. (Id. at ¶ 153). On September 14, 2020, Hawkins began her approved leave under FMLA. (Id. at ¶ 154). While Hawkins was on leave, she learned of her furlough selection and requested her leave end in October 2020 so that she could be furloughed. (ECF No. 57 at ¶ 52). Hawkins was subsequently furloughed from her employment by CDC on October 12, 2020. (ECF No. 69 at ¶ 159). Hawkins was one of three floats furloughed at CDC's Century Center location. (Id. at ¶ 163). On June 28, 2021, CDC offered extended an offer of employment to Hawkins, but she turned it down. (Id. at ¶ 167; ECF No. 58-13, transcript of Hawkins' deposition, at p. 18 (internal p. 64)). CDC did not hire any floats for the Century Center from September 2020 through June 2021. (ECF No. 57 at ¶ 54).

On September 25, 2020, Tate was furloughed from her employment by CDC. (ECF No. 69, at ¶ 193). In June 2021, CDC offered Tate a position as an assistant teacher at the Cascade Center at a slightly higher hourly rate than her prior role; however, Tate failed to respond and chose not to return to work. (Id. at ¶ 197; ECF No. 57, at ¶ 98). CDC did not hire any floats for the Cascade Center from the time of the furlough (September 2020) through the date they offered Tate a job. (Id. at ¶ 99; ECF No. 58-17, Declaration of Rina Irwin, at ¶ 7).

## II.    DISCUSSION

As a preliminary matter, Plaintiff's employment discrimination claims under the PHRA are subject to the same analysis as discrimination claims under Title VII and the ADEA. See Atkinson v. LaFayette College, 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims"); Simpson v. Kay Jewelers, Inc., 142 F.3d 639, 644 n.4 (3d Cir. 1998) (explaining that courts use the same framework to assess Title VII and PHRA claims); Prewitt v. Walgreens Co., 92 F. Supp. 3d 292 n. 4 (E.D.Pa. 2015), citing Fasold v. Justice, 409 F.3d 178, 183-84 (3d Cir. 2005) ("the same analysis used for ADEA is also applied to PHRA claims"). Thus, all such claims will be examined under the Title VII and/or ADEA framework, with the understanding that the result is equally applicable to Plaintiff's PHRA claims.

### A.    Age Discrimination

Count II of Plaintiffs' complaint alleges that both Hawkins and Tate were targeted for furlough due, in part, to the fact that they were over the age of 40, in violation of the ADEA.

#### 1.    ADEA Burden of Proof

The order of proof in a suit under the ADEA mirrors that of a Title VII discrimination

action. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Rodriguez v. Taylor</u>, 569 F.2d 1231, 1239 (3d Cir. 1977), <u>cert</u> <u>denied</u>, 436 U.S. 913 (1978).

"To establish a prima facie case of age discrimination under the ADEA, [plaintiff] must make a showing that: (1) she is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." <u>Burton v. Teleflex Inc.</u>, 707 F.3d 417, 426 (3d Cir. 2013) (citation omitted). Proof of these basic facts raises an inference of discrimination, which is given the force and effect of a rebuttable presumption. <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).

Once a prima facie case is established, the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment action. <u>Burdine</u>, 450 U.S. at 254; <u>Santiago v. Brooks Range Contract Servs.</u>, 618 Fed. Appx. 52, 54-55 (3d Cir. 2015). The employer need not persuade the court that it was actually motivated by the proffered reasons, but needs only to raise a factual issue as to whether it discriminated against the plaintiff. <u>Burdine</u>, at 254-55. This burden is satisfied if the employer "simply 'explains what [it] has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'" <u>Board of Trustees of Keene State College v. Sweeney</u>, 439 U.S. 24, 25, n.2 (1978). Thus, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." <u>Burdine</u>, 450 U.S. at 257.

Once the employer has met its relatively light burden of articulating a legitimate reason

for the adverse employment decision, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's proffered explanation is pretextual. Id. Plaintiff may meet this burden either directly, by persuading the court that the employer's action was more likely motivated by a discriminatory reason, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. See McDonnell Douglas, 411 U.S. at 804-805.

Throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff. See Burdine, 450 U.S. at 253-256. Plaintiff may meet this burden if his "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

### 2.    *Prima Facie* Case

Here, CDC argues that both Plaintiffs have failed to set forth a *prima facie* case of age discrimination because neither can satisfy the fourth prong by showing that she was "ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." The Court agrees.

The record evidence establishes that Tate was the only floater employed at CDC's Cascade Center at the time of her furlough in September 2020. (ECF No. 58-17, Declaration of Rina Irwin, at p. 3). The record evidence also establishes that Hawkins was one of three floaters employed at CDC's Century Center, all of whom were furloughed in the fall of 2020. (Id.). So, after the furloughs, there were no floaters employed at either the Cascade or Century Centers,

and it is undisputed that CDC did not hire any floats at either location from the time of Plaintiffs'

furloughs through June of 2021. (ECF No. 54, at ¶¶ 54, 99). Thus, neither Plaintiff is able to

establish that she was replaced by another employee who was sufficiently younger than she.[2] As

a result, Plaintiffs are unable to set forth a *prima facie* case of age discrimination, and summary

judgment will be granted in favor of CDC on such claim.

### B.     Race Discrimination

Counts III and IV of Plaintiffs' complaint alleges that the furloughs of both Hawkins and

Tate were racially motivated in violation of Title VII, the PHRA, and Section 1981.[3]

Title VII provides, *inter alia*, that it is an "unlawful employment practice for an employer

to … discharge any individual, or otherwise to discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such

individual's age…." 42 U.S.C. § 2000e-2(a)(1).

To establish a prima facie case of discrimination at the first step of the *McDonnell*

*Douglas* framework, a plaintiff must show (1) that he is a member of a protected class, (2) that

---

[2]
With regard to Hawkins, Plaintiffs argue that the float roles at CDC's Century Center were replaced by "teachers with empty classrooms" who were "sufficiently younger;" however, the deposition testimony cited by Plaintiffs in support of this argument fails to establish this fact. Indeed, it appears that the cited deposition testimony reflects circumstances that occurred at CDC's Asbury Center, where neither Hawkins nor Tate was employed. (See, ECF No. 65-2, at pp. 42-43 (internal pp. 177-178) (The Court presumes that this is the deposition testimony to which Plaintiffs cite in their opposition brief (ECF No. 63 at p. 36), since the exhibit cited by Plaintiffs (Exhibit D) does not contain pp.177-178). Thus, Plaintiffs' argument in this regard is unavailing.

[3]
The Third Circuit has recognized that "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII" Brown v. J. Kaz, Inc., 581 F.3d 175, 181 (3d Cir. 2009), citing Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999).

he was qualified for the position he had, (3) that he suffered an adverse employment action, and

(4) that "the action occurred under circumstances that could give rise to an inference of

intentional discrimination." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169 (3d Cir.

2013), quoting Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). At the summary judgment

stage, the plaintiff's burden is to show that there is sufficient evidence "'to convince a reasonable

factfinder to find all of the elements of the prima facie case.'" Burton, 707 F.3d at 426,

quoting Duffy v. Paper Magic Grp., Inc., 265 F.3d 163, 167 (3d Cir. 2001). The "central focus"

of the *prima facie* case "is always whether the employer is treating some people less favorably

than others because of their race, color, religion, sex, or national origin." Sarullo v. U.S. Postal

Serv., 352 F.3d 789, 798 (3d Cir. 2003). If a plaintiff fails to raise a genuine dispute of material

fact as to any of the elements of the prima facie case, she has not met her initial burden, and

summary judgment is properly granted for defendant. See Geraci v. Moody–Tottrup, Int'l,

Inc., 82 F.3d 578, 580 (3d Cir.1996).

    Here, CDC has essentially conceded the first three elements of Plaintiffs' *prima facie*

case; however, CDC maintains that Plaintiffs have not adduced sufficient evidence to establish

the fourth element of their *prima facie* claims. The Court agrees.

    To establish the fourth element, Plaintiff must produce "'evidence adequate to create an

inference that an employment decision was based on a[n] [illegal] discriminatory criterion....'"

Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 355 (3d Cir. 1999), quoting Teamsters v. United

States, 431 U.S. 324, 358 (1977) (alterations in original). In a case such as this, involving a

reduction in workforce, "a plaintiff satisfies the fourth element by demonstrating that the

9

employer retained similarly situated employees who were not within the protected class." <u>Wood v. Univ. of Pittsburgh</u>, 395 Fed. Appx. 810, 814 (3d Cir. 2010), <u>citing</u> <u>Anderson v. Consol. Rail Corp.</u>, 297 F.3d 242, 249-50 (3d Cir. 2002). This they cannot do.

As already noted with regard to Plaintiffs' age discrimination claims, after Hawkins and Tate were furloughed, there were no floaters retained at either the Cascade or Century Centers where they were employed. Moreover, it is undisputed that CDC did not hire any floats at either location from the time of Plaintiffs' furloughs through June of 2021. (ECF No. 54, at ¶¶ 54, 99). In their opposition brief, Plaintiffs have even acknowledged the "lack of comparator evidence" in the record (ECF No. 63, at p. 37), and merely make the bald assertion that CDC retained "younger, less experienced Caucasian employees with similar or inferior performance records" without citing any evidence of record to support their claim. (<u>Id</u>. at p. 52).

In short, neither Plaintiff is able to establish that CDC "retained similarly situated employees who were not within the protected class" and, thus, neither can satisfy the fourth element of her *prima facie* case of race discrimination under either Title VII or section 1981. As a result, summary judgment will be entered in favor of CDC on Counts III and IV of the complaint.

## C.    **FMLA Interference**

At Count V of the complaint, Plaintiffs assert a claim of FMLA interference on behalf of Plaintiff Hawkins, only, alleging that, by placing her on furlough while she was on FMLA leave, Defendants violated her rights by interfering with and/or restraining her exercise of FMLA leave in direct violation of 29 U.S.C. § 2615(a)(1), which makes it "unlawful for any employer to

interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

In order to prove a claim for FMLA interference, a Plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." Ross v. Gilhuly, 755 F.3d 185, 191–92 (3d Cir. 2014), citing Johnson v. Cmty. Coll. of Allegheny Cnty., 566 F.Supp.2d 405, 446 (W.D. Pa. 2008); see also Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006).

To assert an interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Callison v. City of Philadelphia, 430 F.3d 17, 119 (3d Cir. 2005) (citation omitted). "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Id. at 120. "Because the FMLA is not about discrimination, a *McDonnell–Douglas* burden-shifting analysis is not required." Sommer, 461 F.3d at 399 (citations omitted).

Here, it is undisputed that Hawkins requested leave during the COVID pandemic to care for her school-aged children, which leave request was granted by CDC. (ECF No. 58-13, Hawkins' deposition transcript, at p. 5 (internal p. 27)). According to Hawkins, her leave began on September 14, 2020 and was scheduled to end in December 2020. (Id. at pp. 6-7 (internal pp. 28-29)).

11

On September 25, 2020, while Hawkins was on leave, Plaintiff McCallum called her to tell her about the furloughs (Id. at pp. 7-8 (internal pp. 29-30)). Hawkins then contacted CDC's Human Resources Director, Laura Stippich ("Stippich"), on September 28, 2020, to ask about the furlough, at which time Stippich informed Hawkins that she was one of the employees selected for furlough and that she would be furloughed upon her return from leave in December 2020. (Id. at pp. 9-10 (internal pp. 32-33)). However, instead of waiting to be furloughed at the end of her leave, Hawkins emailed Stippich on September 29, 2020, and requested that her leave be terminated on October 9, 2020, so that she could be furloughed earlier to allow her to "job search." (Id. at pp. 10-13 (internal pp. 33-37)).

Based on the foregoing, it is clear that there is no evidence of record to support Hawkins' assertion that CDC interfered with her entitlement to take leave under the FMLA. Instead, it was Hawkins who requested that CDC end her leave early. Indeed, had Hawkins not voluntarily terminated her leave early, CDC would have continued to honor her rights under the FMLA, as evidenced by Stippich's statement that Hawkins would have been furloughed only after she returned from leave in December 2020. Thus, Hawkins is unable to prove that CDC withheld any entitlement guaranteed by the FMLA, which is required to establish a claim of interference, and summary judgment will be entered in favor of CDC, accordingly.

An appropriate Order follows.

12